UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

JOSEPH MARZACCO,

                 Plaintiff,

          vs.

SEMGROUP CORPORATION, CARLIN G.
CONNER, THOMAS R. MCDANIEL, KARL F.
KURZ, RONALD A. BALLSCHMIEDE,
JAMES H. LYTAL, SARAH M. BARPOULIS,
and WILLIAM J. MCADAM,

               Defendants.

---------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Joseph Marzacco ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.     This action is brought by Plaintiff against SemGroup Corporation ("SemGroup" or the "Company") and the members of SemGroup's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which SemGroup will be acquired by Energy Transfer LP ("Energy Transfer") through its wholly owned subsidiary, Nautilus Merger Sub LLC ("Merger Sub") (the "Proposed Transaction").

2.      On September 16, 2019, SemGroup issued a press release announcing that it had entered into an Agreement and Plan of Merger with Energy Transfer dated September 15, 2019 (the "Merger Agreement").   Under the terms of the Merger Agreement, each SemGroup stockholder will be entitled to receive a combination of (i) $6.80 in cash, without interest (the "per share cash amount"), and (ii) 0.7275 of a common unit representing a limited partner interest in Energy Transfer (the "exchange ratio," and together with the per share cash amount, the "Merger Consideration").   Based on the September 13, 2019 closing price of Energy Transfer's common units, the Merger Consideration represented approximately $17.00 per share of SemGroup common stock.   The Proposed Transaction is valued at approximately $5.1 billion, including the assumption of debt and other liabilities.

3.      On October 30, 2019, SemGroup filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.   The Proxy Statement, which recommends that SemGroup stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) SemGroup and Energy Transfer management's financial projections for SemGroup and Energy Transfer, relied upon by the Company's financial advisor, Jefferies LLC ("Jefferies"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Jefferies; (iii) potential conflicts of interest of Jefferies; and (iv) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, SemGroup's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.

Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because defendants are found or inhabitants or transact business in this District.  SemGroup's common stock trades on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of SemGroup.

9.      Defendant SemGroup is a Delaware corporation, with its principal executive offices located at Two Warren Place, 6120 South Yale Avenue, Suite 1500, Tulsa, Oklahoma 74136.  The Company serves the midstream market providing gathering, transportation, storage, distribution, marketing and other midstream services.  SemGroup's common stock trades on the New York Stock Exchange under the ticker symbol "SEMG."

10.    Defendant Carlin G. Conner ("Conner") has been President, Chief Executive Officer ("CEO"), and a director of the Company since 2014.

11.    Defendant Thomas R. McDaniel ("McDaniel") has been Chairman of the Board since 2017 and a director of the Company since 2009.

12.    Defendant Karl F. Kurz ("Kurz") has been a director of the Company since 2009.

13.    Defendant Ronald A. Ballschmiede ("Ballschmiede") has been a director of the Company since 2009.

14.    Defendant James H. Lytal ("Lytal") has been a director of the Company since 2011.

15.    Defendant Sarah M. Barpoulis ("Barpoulis") has been a director of the Company since 2009.

16.    Defendant William J. McAdam ("McAdam") has been a director of the Company since 2017.

17.    Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18.    Energy Transfer is a publicly traded limited partnership owning and operating a diversified portfolio of energy assets.  Energy Transfer's core operations include complementary natural gas midstream, intrastate and interstate transportation and storage assets; crude oil, natural gas liquids ("NGLs") and refined product transportation and terminalling assets; NGL fractionation; and various acquisition and marketing assets. Energy Transfer's common units trade on the New York Stock Exchange under the ticker symbol "ET."

19.    Merger Sub is a Delaware limited liability company and wholly owned subsidiary of Energy Transfer.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     SemGroup is engaged in diversified services in the North American fossil fuel industry, with operations including the gathering, transportation, storage, distribution, marketing and other mainstream services, which are provided primarily to producers, refiners of petroleum products and other market participants located in the Gulf Coast, Midwest and Rocky Mountain regions of the United States and Canada.  SemGroup's operations are conducted directly and indirectly through its primary operating segments: U.S. Liquids, U.S. Gas, and Canada.

21.     The Company's crude oil business operates primarily in Colorado, Kansas, Louisiana, Minnesota, Montana, North Dakota, Oklahoma, Texas and Wyoming.  SemGroup's assets include gathering systems in and around producing fields and transportation pipelines and trucks carrying crude oil to logistic hubs, such as the Cushing Interchange and Houston Ship Channel, where the Company has terminalling and storage facilities.

22.     SemGroup operates its natural gas gathering and processing assets in the U.S. and Canada.  Gathering systems typically consist of a network of small diameter pipelines and compression systems that collect natural gas from producing wells and transport it to larger pipelines for further transmission to a gas processing plant.

23.     On May 14, 2019, the Company announced it had entered into an asset joint venture with Keyera Corp. to construct a NGL and condensate pipeline system to connect the liquids-rich Montney and Duvernay production areas of northwestern Alberta to the fractionation and condensate hubs in Fort Saskatchewan, Alberta.  This pipeline system provides producers additional and alternative transportation solutions to meet growing production and is supported by long-term contracts with significant take-or-pay commitments.

**The Proposed Transaction**

24.     On September 16, 2019, SemGroup issued a press release announcing the Proposed

Transaction.  The press release states, in relevant part:

> TULSA, Okla., Sept. 16, 2019 -- SemGroup® Corporation (NYSE: SEMG) today
> announced it has entered into a definitive merger agreement whereby SemGroup
> will be acquired by Energy Transfer LP (NYSE: ET) ("ET" or "Energy Transfer")
> in a unit and cash transaction valued at approximately $5.1 billion, including the
> assumption of debt and other liabilities.
>
> Under the terms of the agreement, which has been unanimously approved by the
> Boards of Directors of both companies, SemGroup shareholders will receive $6.80
> per share in cash and 0.7275 of an ET common unit for each SemGroup share, or
> approximately 40% cash and 60% equity. The equity consideration received is
> expected to be treated as a tax-free transaction. The transaction values SemGroup
> at $17.00 per share, and represents a 65% premium to SemGroup's closing share
> price of $10.28 on September 13, 2019, and an 87% premium to SemGroup's 20
> day volume weighted average price (VWAP) as of the same date. Upon closing,
> SemGroup shareholders are expected to own approximately 2.2% of ET's
> outstanding common units.
>
> SemGroup Chief Executive Officer, Carlin Conner, said, "This strategically and
> financially compelling combination will result in SemGroup joining one of the
> largest midstream energy companies in the country, with a strong footprint in all
> major U.S. production basins. The combined entity's size, scale and financial
> profile will ensure that SemGroup's assets, including our Gulf Coast terminal, mid-
> continent footprint and our Canadian joint venture SemCAMS Midstream, benefit
> from significant growth well into the future. We look forward to leveraging the
> increased pipeline connectivity and expanded terminalling infrastructure that the
> combined entity provides."
>
> Conner continued, "SemGroup has been exploring a range of strategic alternatives
> aimed at increasing shareholder value, and determined that this combination with
> ET is in the best interests of shareholders -- providing immediate value, a
> significant premium, and opportunity to participate in the future upside of the
> combined business. Our transaction with ET underscores the strength of
> SemGroup's assets, and is a testament to our employees' dedication, hard work and
> focus on providing safe, efficient and reliable service while creating an asset
> portfolio that is highly desired."
>
> The transaction is expected to close by late 2019 or early 2020, subject to obtaining
> regulatory approvals, SemGroup shareholder approval and other customary closing
> conditions.

**The Proxy Statement Contains Material Misstatements or Omissions**

25.    Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to SemGroup's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

26.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) SemGroup and Energy Transfer management's financial projections for SemGroup and Energy Transfer, relied upon by the Company's financial advisor, Jefferies, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Jefferies; (iii) potential conflicts of interest of Jefferies; and (iv) the background of the Proposed Transaction.

***Material Omissions Concerning Financial Projections for SemGroup and Energy Transfer***

27.    The Proxy Statement omits material information regarding the financial projections for SemGroup and Energy Transfer, provided by SemGroup and Energy Transfer management and relied upon by Jefferies for its analyses.

28.    For example, the Proxy Statement sets forth:

In arriving at its opinion, Jefferies, among other things:

* * *

- reviewed certain information furnished to Jefferies by the management of SemGroup and Energy Transfer, including financial forecasts and estimates and analyses provided by the management of SemGroup and Energy Transfer, relating to the business, operations and prospects of each of SemGroup and Energy Transfer, respectively[.]

Proxy Statement at 44-45.

29.     In addition, in connection with Jefferies' *Discounted Cash Flow Analysis*, the Proxy Statement sets forth:

> Jefferies performed a discounted cash flow analysis to estimate the present value of cash available for dividends of SemGroup and distributable cash flow of Energy Transfer from calendar year 2020 through calendar year 2024 using financial projections provided by SemGroup and Energy Transfer . . . .

*Id.* at 50.

30.     The Proxy Statement, however, fails to set forth: (i) distributable cash flow of Energy Transfer from calendar year 2020 through calendar year 2024, and the line items used to calculate distributable cash flow; and (ii) the line items used to calculate SemGroup's cash available for dividends, including (a) interest expense, (b) cash taxes, (c) maintenance capital expenditures, (d) preferred distributions, and (e) non-controlling interests.

31.     The omission of this information renders the statements in the "SemGroup Unaudited Prospective Financial Information" and "Opinion of SemGroup's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Jefferies' Financial Analyses***

32.     The Proxy Statement describes Jefferies' fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Jefferies' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, SemGroup's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Jefferies' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

33.     With respect to Jefferies' *Selected Public Companies Analysis* of SemGroup and Energy Transfer, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Jefferies.

34.     With respect to Jefferies' *Discounted Cash Flow Analysis* of SemGroup and Energy Transfer, the Proxy Statement fails to disclose: (i) Energy Transfer's distributable cash flow from calendar year 2020 through calendar year 2024; (ii) the specific metric to which the selected terminal yields were applied for both SemGroup and Energy Transfer; (iii) the implied terminal EBITDA multiples for both SemGroup and Energy Transfer; (iv) whether stock-based compensation was treated as a cash or non-cash expense for the purposes of the analysis; and (v) quantification of the inputs and assumptions underlying the discount rate ranges of 9.77% to 10.77% and 9.15% to 10.15% for SemGroup and Energy Transfer, respectively.

35.     With respect to Jefferies' *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Jefferies.

36.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37.     The omission of this information renders the statements in the "Opinion of SemGroup's Financial Advisor" and "SemGroup Unaudited Prospective Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Jefferies' Potential Conflicts of Interest***

38.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Jefferies.

39.     The Proxy Statement sets forth that at the September 13, 2019 Board meeting Jefferies "disclosed de minimis conflicts of both Jefferies and members of the deal team."  *Id*. at 39.  The Proxy Statement, however, fails to disclose the conflicts of both Jefferies and members of the Jefferies deal team disclosed to the Board.

40.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41.     The omission of this information renders the statements in the "Opinion of SemGroup's Financial Advisor" and "Background of the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

42.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

43.     For example, the Proxy Statement sets forth that "from March 2019 through the announcement of the transaction, the SemGroup board of directors evaluated the merits of a joint venture opportunity that would involve the contribution by SemGroup of most of its crude oil related assets, including the Houston Fuel Oil Terminal Company assets, in exchange for ownership in a newly formed joint venture and cash (the 'proposed joint venture') with Company A, a large North American oil and gas infrastructure company."  *Id*. at 34.  The Proxy Statement fails, however, to disclose the specific terms of each of the joint venture proposals from Company A.

44.     Additionally, the Proxy Statement sets forth that the Company's legal counsel "had previously been retained by SemGroup management and the SemGroup board of directors in

January 2019 to assist in matters relating to a strategic transaction involving Company B." *Id*. at 35.  The Proxy Statement fails, however, to disclose any specific information relating to the strategic transaction with Party B.

45.    Without this omitted information SemGroup stockholders are unable to adequately evaluate and assess the Proposed Transaction compared to the Company's other strategic alternatives.

46.    The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.    The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of SemGroup will be unable to make a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

48.    Plaintiff repeats all previous allegations as if set forth in full.

49.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about SemGroup and Energy Transfer management's financial projections for SemGroup and Energy Transfer, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, potential conflicts of interest of the Company's financial advisor, and the background of the Proposed Transaction.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

52.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## <u>COUNT II</u>

**Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

54.     Plaintiff repeats all previous allegations as if set forth in full.

55.     The Individual Defendants acted as controlling persons of SemGroup within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of SemGroup, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

58.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the other SemGroup stockholders be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of SemGroup, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to SemGroup stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 15, 2019

WEISSLAW LLP

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*